# CASES AT LAW

DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### AT MARCH TERM, 1865.

---

THE STATE, THE JERSEY CITY AND BERGEN RAILROAD
COMPANY, PROSECUTORS, v. THE MAYOR AND COMMON
COUNCIL OF JERSEY CITY, DEFENDANTS.

1. The provisions of the general tax law of 1862, as applicable to private corporations claiming exemption from taxation under their charters, discussed and considered.
2. The principles adopted by the Supreme Court in the case of *Miller,
collector, &c., ads. The State, The Morris and Essex Railroad Company,
prosecutors,* 1 *Vroom* 368, and afterwards by this court, *ante* 521, examined and affirmed.

Error to the Supreme Court. In matter of taxation.

The assessor of Jersey City assessed the Jersey City and
Bergen Railroad Company upon the amount of their capital
stock, estimated at $150,000.

The assessment was removed to the Supreme Court, where
the prosecutors contended—

1. That by the provisions of their charter they were not
liable to such assessment; and

**575**

2. If liable, the amount on which they were assessed was too large.

The Supreme Court, after examining proofs, fixed the amount of capital stock paid in at $63,200, and held that on that sum the company was liable to be taxed, and that the assessment was legal.

This writ of error is brought to reverse the judgment of the Supreme Court.

For the plaintiffs in error, *A. O. Zabriskie.*

For the defendants, *R. D. McClelland.*

BEASLEY, CHIEF. JUSTICE.    In the year 1862 the city, county, and state tax was assessed, by the assessor of Jersey City, on the capital stock of the Jersey City and Bergen Railroad Company, the plaintiffs in error in this court.    The capital stock was estimated by this officer at $150,000, but it having appeared to the Supreme Court, from the proofs before them, that the whole amount of the capital paid in was but $63,200, the sum assessed was measurably reduced, and, in this modified form, the assessment was adjudged to be legal. This judgment is brought into this court by the writ of error in this case.

The act incorporating the Jersey City and Bergen Railroad Company was passed on the 15th March, 1859, *Pamph. L., p.* 411.    The fourteenth section of this law contains a provision in the following words, *viz.:*  " And  as soon as the said railroad, or any part thereof, shall be put in operation, the said corporation shall pay to the treasurer of this state a tax of one-half of one per centum on the amount expended by said company for said road, which shall in like manner be paid annually thereafter, on the first Monday in January in each year; provided, that no other tax or impost shall be levied or assessed upon the said company."    The last clause of this same statute declares " that the legislature may, at any time, alter, modify, or repeal the same."

Provisions similar to the foregoing are to be found in the charters of most of the railroads of this state, and it has been, on several occasions, decided that such provisions protect the companies from taxation imposed by force of general statutes. *The State* v. *Minturn,* 3 *Zab.* 529 ; *The State* v. *Bentley, Ib.* 532.

It was not denied, upon the argument, that the legislature has power to alter, at will, the mode and amount of the tax prescribed in the charter of the plaintiffs in error, but the counsel of that company insisted that the legislature, by the act of 1862, (*Pamph. Laws,* p. 349,) did not intend to make any such alteration. This point depends on the proper construction of sections eight and twenty-one of the act last referred to. The former of these sections provides : "That all private corporations of this state, except those which, by virtue of any irrepealable contract in their charter, or other contracts with this state, are expressly exempted from taxation, shall be and are hereby required to be respectively assessed and taxed at the full amount of their capital stock paid in, and accumulated surplus." And the latter of the sections referred to declares : "That all other acts and parts of acts, whether special, local, or otherwise, inconsistent with the provisions of this act, be and the same are hereby repealed."

The first question arising on these clauses is, whether the plaintiffs in error are embraced in either of the classes constituting the exception to the general description of "all private corporations of this state?"

It is not urged that the plaintiffs are excepted on the ground of being possessed of "any irrepealable contract in their charter," but their immunity is claimed because they belong to that other class of corporations who hold "other contracts with the state."

This same question was considered and decided by this court, at the last term, in the case of *Miller* ads. *The State.* *
That controversy grew out of an assessment which had been made by the assessor of the township of Morris, on certain

---

* *Supra* 521.

land of the Morris and Essex Railroad Company, whose char-
ter contained a provision similar to the one above quoted from
that of the plaintiffs in this case, designating what sum the
corporation should annually pay, and directing that such sum
should be in lieu of all other taxes.   As it was incontestable
that if that company was possessed of a contract exempting
it from all taxation within the meaning of the act of 1862,
the assessment on their land was unlawful, the principal point
discussed on the argument, and the one most carefully con-
sidered by this court, was the true construction of the eighth
section of that act.   It was altogether impossible to determine
that case, on rational grounds, without settling, in the first
place, and as the indispensable premises from which the con-
clusion of the court was to be drawn, the true meaning of this
section.   It will be seen, therefore, that the principal point,
argued so ably by the counsel of the plaintiffs in this case,
was the same point which formed a necessary part of the case
alluded to, and which was then determined by a large majority
of this court against the right of the company to the exemp-
tion claimed.   On that occasion it was understood that the
court adopted the reasoning and the conclusion, on all the
points, contained in the opinion of Mr. Justice Elmer, de-
livered in the same case in the Supreme Court, the result
being that the assessment which had been made on the land
of the Morris and Essex Railroad Company was sustained, on
the ground that the clause in the charter of that company did
not bring it within the exception declared in the eighth section
of the act of 1862.   In the opinion just mentioned the reasons
of determination are so very clearly stated that it is not neces-
sary, in order to explain what is believed to have been the
views of this court, to do more than refer to it.   But there
was an additional aspect in which this subject was presented
to my own mind, and as it had much influence in leading to
the judgment which I formed, it seems proper that it should
be declared.   It was this :

It has appeared that the eighth section of the act of 1862
erected a new standard of taxation for all corporations, " ex-

cept those which, by virtue of any irrepealable contract in their charters, or other contract with the state, are expressly exempted from taxation." The present plaintiffs' claim, as was, in the former argument, claimed for the Morris and Essex Railroad Company, that although they have no irrepealable contract in their charter, still they have a contract with the state, which brings them within the excepting clause. The contract which they set up is the proviso in the fourteenth section of their charter, before cited, and which, following the provision fixing the annual sum they are to pay, declares that "no other tax or impost shall be levied or assessed" upon them. This designation of what they are to pay, connected with this proviso excluding all other burthens in the form of taxation, they contend, forms a contract between them and the state. This, I think, is an error. These statutory provisions form, in my opinion, a contract neither in letter nor in spirit. They are to be read in connection with that other provision in this charter which reserves to the legislature the right to alter, modify, or repeal it. Taking the three provisions together, then we have, first, a prescription on the part of the legislature, of the amount which the company shall be required to pay annually; second, a declaration that they shall be required to pay no other tax; and third, a further declaration that the legislature reserves the right to alter this arrangement at its will. Now it seems impossible to educe, from these three provisions, a contract on the part of the state to exempt this company from taxation. If the legislature were to declare that each unmarried man should be subject to a poll tax of twenty dollars, "provided that no other tax or impost should be levied or assessed upon" him, no one would suppose that a contract thereby supervened. All persons would perceive that the essential element of a contract was wanting, that is, all obligation on the part of the state to continue the tax in the form prescribed. So, in like manner, the arrangement of the mode of taxation in the charter of the plaintiffs lacks the very substance of a contract, as the whole scheme is alterable at

State, Jersey City and Bergen R. R. Co., Pros., v. Mayor, &c., of Jersey City.

pleasure. It is to be remembered that these legislative grants to corporations are seldom, if ever, in the form of contracts, but, on the contrary, the contract is wholly implied from the subject of the grant and the considerations in which it is founded. This was done in the Dartmouth College case, and as well in the few cases which preceded, as in the numerous ones which have followed that celebrated decision. And it is also to be noticed, that the entire contract on the part of the state implied in each one of this line of cases, was the supposed legislative agreement not to alter or recall the privileges granted. No other stipulation on the part of the state was ever suggested to exist, and it was the imagined existence of such stipulation alone which converted what else, in all its essential qualities, as well as in its form, was an act of legislation, into a contract on the part of the community with the corporators. Without some such stipulation, having an obligatory force, I am wholly unable to conceive the ground of difference between the charter of a corporation and any other act of legislation. If a statute lay no obligation on the state to do, or to refrain from doing a particular thing, or one or more things, such enactment seems to me to be a pure act of legislation, and in no sense a contract. I am not aware that any court has ever treated a charter of an incorporated company, which was alterable and repealable at the legislative will, as a contract on the part of the public. If, from such a subject, with such incidents, a contract arises between the people and the members of the company, of what does such contract of the people consist? In the case now in hand, what did the state, either by expression or implication, agree to bind herself to do? I can see nothing in this law, which, so far as concerns the state, bears a contractual impress. When a state grants lands to an incorporated company, or to an individual, it is obvious that there is, from the nature of the transaction, a tacit intimation on her part that she will not re-assert any right over the thing relinquished, and on this basis is erected the structure of the implied contract. But it would be an

State, Jersey City and Bergen R. R. Co., Pros., v. Mayor, &c., of Jersey City.

useless refinement to raise up, by intendment, a contract where neither restraint is imposed, nor the duty to perform an act assumed. In the case of *Fletcher* v. *Peck*, 6 *C.* 87, the Supreme Court of the United States thus expounded the word " contract," as used in that clause of the constitution of the United States which forbids their impairment by legislation : " A contract is a compact between two or more persons, and is either executory or executed. An executory contract is one in which a party binds himself to do, or not to do a particular thing. A contract executed, is one in which the object of the contract is performed ; and this, says Blackstone, differs in nothing from a grant. A contract executed, as well as one that is executory, contains obligations binding on the parties. A grant in its own nature amounts to an extinguishment of the right of the grantor, and implies a contract not to re-assert that right." This language, as accurate as it is unambiguous, was used in reference to a grant of land by the governor of a state under a legislative act. Here the essence of the contract, even when executed in the form of a grant of land, is derived from the national agreement of the state to refrain from reclaiming the thing granted.

But whatever aspect this general subject may be supposed to wear, and even though a revocable grant of things or franchises may be thought, in some of its features, to resemble a contract, still I am unable to see how that branch of the topic which touches the question now before this court, is open to any doubt. For if we assume that a contract exists between the state and the plaintiffs in error, by force of their charter, yet, nevertheless, it would seem to be clear, that it is not a contract of the character required by the excepting clause of the eighth section of the act of 1862. That contract is one by which the corporation, in the words of the act, is exempted from taxation. That is, from all kinds of taxation ; taxation by virtue of special, as well as general legislation. But the plaintiffs in error do not, and they certainly cannot, pretend that they have this broad immunity. If they can set up a contract at all, it must be to the effect that the state agreed to

exempt them from all taxes which should not be specially imposed upon them. Immunity to this extent was claimed, and the claim conceded, in the case of *The State* v. *Minturn.* But this will not bring them within the exception. The statutory requirement is exemption from taxation in all its forms; consequently, it is not enough to show an exemption in certain particulars. "Exempted from taxation" cannot be curtailed into "exempted from taxation under general laws imposing taxes," and this latter privilege is all that has ever been asserted under provisions in all respects identical with the one under consideration. Regarding, therefore, this clause of the charter now in question either as an ordinary act of legislation, or as a contract, I think the deduction is unavoidable, that the company is not possessed of that qualification which will protect it from the act of 1862.

On the argument of the present case it was admitted that in *Miller* v. *The State,* it was held by this court, that the repealing clause of the statute just referred to, applied to the charters of all private corporations which did not comprehend a provision placing them within the excepting clause, which has been the subject of the foregoing comments. It is not necessary, therefore, to allude to that point further than to refer to the opinion delivered in that case in the Supreme Court, and which has been already mentioned.

The only remaining ground taken against the present assessment was, that it appears from the evidence, that the principal office of the company was not in Jersey City.

I have come to the opposite conclusion; the proof, as it appears to me, being clear upon the point.

In my opinion, the judgment of the Supreme Court should be affirmed.

*For affirmance* — BEASLEY, C. J., CLEMENT, FORT, HAINES, VREDENBURGH, WALES. 6.

*For reversal*—KENNEDY. 1.

CITED in *State* v. *Com'r of Railroad Taxation,* 8 *Vroom* 236.